Lonnie Melvin **MURRAY** and Johnnie Charles Murray, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 22340.

United States Court of Appeals Ninth Circuit.

Nov. 7, 1968.

Rehearing Denied Feb. 5, 1969.

Filippelli & Eisenberg, San Francisco, Cal., Hecsh, Hegner & Philbin, James Canfield (argued), San Diego, Cal., for appellants.

Phillip Johnson (argued), Asst. U. S. Atty., Edwin L. Miller, U. S. Atty., Mobley M. Milam, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before DUNIWAY, ELY and HUF-STEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Lonnie and Johnnie Murray jointly appeal from judgments of conviction of violations of 21 U.S.C. § 174, smuggling and concealing heroin. Appellants were found guilty by a court sitting without a jury.

On appeal appellants challenge the sufficiency of the evidence to support their convictions, the legality of the search which resulted in the seizure of the contraband, the constitutionality of 26 U.S.C. §§ 4721 and 4722, and the sufficiency of the first count of the indictment.

Johnnie and Lonnie are brothers. On the morning of February 11, 1967, the brothers flew from San Francisco, their residence, to Los Angeles for the stated purpose of visiting friends and relatives in Los Angeles. The trip was Lonnie's idea, and he paid their air fare. About an hour after their arrival in Los Angeles, at Lonnie's suggestion, they borrowed a car and drove to Tijuana. Returning from Mexico to the United States the brothers reached the port of entry about 3:00 p. m. the same day. Lonnie was driving the car. Customs Inspector Dale asked each of them about his citizenship and about purchases in Mexico. They replied that they were citizens of the United States and that they had purchased nothing in Mexico. Inspector Dale and another customs inspector escorted the brothers into the search room. Lonnie was searched, and no contraband was found on him. Thereafter Johnnie was told to empty everything from his pockets and to remove his coat. He complied, and as he removed his coat Inspector Dale observed two rubber contraceptives tied with a string around the biceps of Johnnie's left arm. The contraceptives contained a substance later identified as heroin. Both men were arrested and interrogated by the customs officials.

In his statements to the customs officials at the time of his arrest and in his testimony at the trial Johnnie admitted possession of the contraband, but denied that he had any knowledge of the contents of the contraceptives. He explained that while he and his brother were separated, Johnnie was approached by an unidentified man in Tijuana, who offered him $150 to take the contraband into the United States and to deliver it at some unspecified time that evening in Los Angeles. He said that Lonnie knew nothing about the contraband and that Lonnie had nothing to do with it. At the time of Lonnie's arrest and at the trial, Lonnie denied that he knew anything about the contraband and insisted that he had no complicity in the incident. He also testified that he and his brother were separated for varying periods of time during their visit to Tijuana.

### Lonnie's Appeal

The evidence is insufficient to support Lonnie's conviction. The Government had to prove that Lonnie received or concealed, or facilitated Johnnie's transportation or concealment of the heroin, that the heroin had been import-

ed contrary to law, and that Lonnie had knowledge of the illegal importation. E.g., Brothers v. United States (9 Cir. 1964) 328 F.2d 151, 152–153, cert. denied 377 U.S. 1001, 84 S.Ct. 1934, 12 L.Ed.2d 1050 (1964); United States v. Llanes (2 Cir. 1967) 374 F.2d 712, 715, cert. denied 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967). The brothers were neither charged with nor found guilty of conspiracy. There was no direct evidence that Lonnie knew anything about the heroin concealed on Johnnie's person, and there is no circumstantial evidence from which that knowledge can be presumed or inferred.

■■■ Lonnie was not in actual possession of the contraband. He would have been in constructive possession of the heroin if he had personally shared custody of it or had such dominion and control over the drug as to give him the power of disposition. Brothers v. United States, supra, 328 F.2d at 155; Arellanes v. United States (9 Cir. 1962) 302 F.2d 603, 606, cert. denied 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962); Rodella v. United States (9 Cir. 1960) 286 F.2d 306, 311, cert. denied 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1960). Johnnie's acts could also be imputed to Lonnie if Johnnie was Lonnie's agent, subject to his control. United States v. Hernandez (2 Cir. 1961) 290 F.2d 86, 90. But "mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession." Arellanes v. United States, supra, 302 F.2d at 606; Evans v. United States (9 Cir. 1958) 257 F.2d 121, 126, cert. denied 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958).

From the facts that Johnnie and Lonnie were brothers who maintained a close relationship with each other, that the trip was Lonnie's idea and he paid for the flight from San Francisco to Los Angeles, that Lonnie drove the borrowed car, and that Lonnie may have had a stronger personality than Johnnie, no inference arises that Johnnie was subject to Lonnie's direction and control, or that they were joint venturers engaged in narcotic activity, or that Lonnie could control the disposition of the heroin concealed on Johnnie's person. That evidence, of course, may give rise to a suspicion that Lonnie was implicated with Johnnie in the importation and concealment of the heroin, but a suspicion, however strong, is not proof. Cf. Evans v. United States, supra, 257 F.2d at 126.

Because the evidence was inadequate to prove Lonnie's constructive possession of the heroin, the statutory presumption found in the second paragraph of § 174 did not arise.[1] The evidence is no sturdier as the foundation for an inference of knowledge independent of the statutory presumption. Lonnie and Johnnie both denied that Lonnie knew anything about the heroin. Johnnie gave an explanation about his own possession of the drug implicating only himself. The District Court, of course, could have disbelieved both of them. But rejection of their testimony on this point simply leaves a blank; it adds nothing to the proof. A conclusion that Lonnie and Johnnie lied about Lonnie's knowledge is not evidence that Johnnie told Lonnie about the heroin or that Lonnie learned about it in some other way. The burden is on the Government to prove knowledge, not upon Lonnie to disprove that fact.

■■■ It is apparent that the Government's case against Lonnie was fully and carefully developed. No purpose would be served by requiring him to be retried. Accordingly, upon remand, Lonnie's indictment shall be dismissed.

---

1. 21 U.S.C. § 174, in pertinent part, provides: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the posssession to the satisfaction of the jury."

### Johnnie's Appeal

 Johnnie and the contraband were firmly attached to each other, and the section 174 presumption was attached to the contraband. The combination resulted in adequate proof to sustain his conviction. Johnnie's only hope was to convince the District Court that he did not know the narcotic character of the substance he was carrying. That hope was vain. The District Court did not have to believe his story, and it is the District Court's prerogative, not ours, to determine questions of credibility.

Johnnie relies on Henderson v. United States (9 Cir. 1967) 390 F.2d 805, decided after his opening brief on appeal had been filed, to support his contention that he was subjected to an illegal search. *Henderson* recognizes the general rule that every person crossing our border may be subjected to a search of his baggage, his vehicle, and his person, but it added a requirement that some real suspicion of the person must exist to justify a strip search of that person. Johnnie simply removed his coat. He was not stripped, and the *Henderson* limitation is inapplicable to him.

Johnnie says that he cannot be convicted of importing heroin "contrary to law" because he could not have been compelled to comply with the statutes which would have made his importation lawful inasmuch as those statutes are unconstitutional. The assumed premise for his argument is that his importation of heroin would have been lawful had he complied with the taxing provisions of 26 U.S.C. § 4721 and the registration provisions of 26 U.S.C. § 4722. He argues that he could not be compelled to comply with sections 4721 and 4722 because those statutes are constitutionally vulnerable under the decisions of the United States Supreme Court in Marchetti v. United States (1968) 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Haynes v. United States (1968) 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923, and Grosso v. United States (1968) 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906; therefore his importation of heroin was not "contrary to law", an essential element of the offense proscribed by section 174. To state the argument is to refute it. He offers no support for the premise, and the conclusions he draws from the premise do not follow. He has no standing to attack sections 4721 and 4722. He was not charged with nor convicted of violating either of those statutes.

There is no merit to Johnnie's attack on the first count of his indictment.

The judgment of conviction of Johnnie Murray is affirmed. The judgment of conviction of Lonnie Murray is reversed, with directions to dismiss the indictment against him.