**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Willie Dee HOOD, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ella HOOD, Defendant-Appellant.**

**Nos. 73–2159, 73–2105.**

United States Court of Appeals, Ninth Circuit.

Feb. 15, 1974.

Rehearing Denied April 30, 1974.

---

Barry Tarlow, Los Angeles, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Eric A. Nobles, Chester L. Brown, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, WRIGHT and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Willie and Ella Hood appeal from their convictions of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.

The Hoods were stopped at 2:00 a. m. after state police officers noticed that the rear license plate of the vehicle in which they were slowly proceeding was not illuminated and that the car was weaving back and forth across the center of the road (at one point narrowly missing a parked vehicle). Before the Hood car stopped, the officers saw Mrs. Hood bending over in the front seat as though she were attempting to conceal something. Mr. Hood got out of the car to talk to the officers but, apparently because the parking brake was not engaged, the Hood car rolled backward almost hitting the patrol car. After resetting the brake, Mr. Hood was ordered out of the car. One officer pointed a flashlight into the car and saw Mrs. Hood's open purse, on the console between the two front seats, with several vials of pills in it. The officer removed the pills and upon examining them discovered that there were different types of capsules and tablets in a single prescription bottle and that additional capsules in unmarked vials resembled amphetamine sulfate derivatives. Mrs. Hood was then ordered to get out of the car and after she complied, the officer saw, with the aid of his flashlight, a partially opened briefcase on the passenger side floorboard, which had been obscured from view while Mrs. Hood was sitting in the car. A brown shopping bag was partially visible inside the briefcase and inside the shopping bag was a partially exposed cellophane package containing a brownish-white substance which the officer thought to be, and was ultimately determined to be, heroin.

During a hearing on a motion to suppress the heroin, the Hoods denied that there was any erratic driving and that there was any "furtive gesture" made. Mrs. Hood claimed that her purse was closed and that it was only after it was opened and searched that the pills were discovered. The Hoods also testified that the heroin was not in an open briefcase and that the officers found it only after searching the car for 20 minutes. The Hoods claim that the

testimony of the police officers was fabricated and cite several cases which comment on alleged increasing "boiler plate" testimony by police officers regarding "furtive gestures" and objects seen in "plain view." [1]

There can be no doubt that any such police conduct is reprehensible. Our freedoms could be eroded by totalitarian police as well as by vandals. But whether or not the alleged improper police conduct actually occurred is a question of fact to be decided by the district court. While the Hoods' arguments might be persuasive to the trial judge in assessing diametrically opposed testimony from the police and the Hoods, we must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the government as the prevailing party. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It must constantly be borne in mind that it is the function of the trier of fact "to determine the credibility of witnesses[,] to resolve evidentiary conflicts, and [to] draw reasonable inferences from proven facts." United States v. Barham, 466 F.2d 1138, 1140 (9th Cir. 1972), cert. denied, 410 U.S. 926, 93 S.Ct. 1356, 35 L.Ed.2d 587 (1973). The trier of fact may disbelieve either the defendants or the police officers and from that disbelief, along with other evidence, draw a conclusion which is contrary to their testimony. See United States v. Cisneros, 448 F.2d 298, 305 (9th Cir. 1971). As we are not the trier of fact, it is not our function to review the evidence de novo and we must reject the suggestion that we engage in conjecture about the police officers' testimony. The trial judge was in the unique position to observe the demeanor of both the Hoods and the police officers while we have only the cold record, which is sterile in comparison. Glasser, Barham and Cisneros wisely foreclose us from substituting our view of the evidence for that of the trial judge unless his findings are clearly erroneous.

Viewing the evidence as Glasser dictates, the critical issue becomes whether it was lawful to direct Mrs. Hood to exit the vehicle. Once she got out of the car, the heroin was in plain view and the officers could properly seize it.

■ The Hoods were lawfully stopped for a traffic violation. The fact that the car was stopped at 2:00 a. m., that it was weaving, that it narrowly missed a parked vehicle and that the driver did not engage the parking brake would lead reasonably prudent police officers to believe that something had caused the driver to be intoxicated. An officer shined his flashlight in the car and saw vials of pills in plain view in Mrs. Hood's open purse. His use of the flashlight did not constitute a search and what he saw was encompassed within the plain view doctrine. United States v. Walling, 486 F.2d 229, 236 (9th Cir. 1973); Williams v. United States, 404 F.2d 493, 494 (5th Cir. 1968).

■ Under the circumstances the officers could reasonably believe Mr. Hood was driving while under the influence of pills which had come from one or more of the containers in Mrs. Hood's purse. It was not impermissible to examine the vials. After inspecting the pills and dis-

1. The Hoods argue that "decisions of the higher courts do not affect police behavior but only police testimony," and cite a recent California Supreme Court decision quoting a law review article which discusses the problem. People v. Superior Court, 3 Cal.3d 807, 827–28 n. 13, 91 Cal.Rptr. 729, 742–43 n. 13, 478 P.2d 449, 462–63 n. 13 (1970). As an example of what the Hoods allege to be a common misuse of the plain view rule, they cite Thomas v. Superior Court, 22 Cal.App.3d 972, 99 Cal.Rptr. 647 (1972), where officers claimed to have seen a hand-rolled cigarette on the back seat of a car. On the issue of the credibility of the officers' testimony as opposed to that of the Hoods, they cite People v. Dickerson, 273 Cal.App.2d 645, 650 n. 4, 78 Cal.Rptr. 400 (1969). In addition, the Hoods point to California v. Krivda, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), where the state of Illinois, as amicus curiae, asked for the abolition of the exclusionary rule because "it causes their police to perjure themselves in hundreds of cases." 12 Crim.L.Rptr. 4036 (Oct. 18, 1972).

covering that some of them resembled contraband, and having in mind that they were found in her purse, it was neither unreasonable nor impermissible for the officers to ask Mrs. Hood to get out of the car. When Mrs. Hood exited the car, the officers saw the open briefcase in plain view and lawfully seized it. The lower court refused, and rightfully so, to suppress the heroin found in the briefcase. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

The Hoods argue that the officers could not order Mrs. Hood out of the car unless they had probable cause to arrest her. Even if we were to accept that contention, we are not persuaded that probable cause did not exist. The officers reasonably believed she was carrying contraband in her purse. The officers had reasonably concluded she was in possession of amphetamine sulfate derivatives. *See* 21 U.S.C. § 844.

■ We reject the Hoods' claim that the evidence was insufficient to sustain the convictions. They claim that there was insufficient evidence of their knowledge of the contraband. An inference of Mr. Hood's knowledge can be drawn from the fact that he drove and had control of the vehicle. United States v. Dixon, 460 F.2d 309 (9th Cir.), cert. denied, 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972). That same inference does not apply to passengers. United States v. Thomas, 453 F.2d 141 (9th Cir. 1971), cert. denied, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972). However, where there is a rational basis for attributing an interest in the contraband to the passenger because of his relationship to the driver, his attitude, conduct or other probative circumstances, the trier of fact can infer sufficient knowledge to sustain a conviction for possession. United States v. Irion, 482 F.2d 1240, 1247-48 (9th Cir. 1973); Bettis v. United States, 408 F.2d 563 (9th Cir. 1969). Here, the trier of fact had ample evidence to constitute a rational basis for attributing such an interest to Mrs. Hood. She was the wife of the driver, rather than a temporary passenger, with a reason to know where her husband was going and his intentions. The approximately seven pounds of heroin, with a street value estimated to be $400,000 when finally cut and packaged, was not hidden, but was easily seen and under her legs in an open briefcase. In addition, she made a gesture towards the briefcase as the car was stopping pursuant to the officers' red light.

This is not like Delgado v. United States, 327 F.2d 641 (9th Cir. 1964), where marijuana was found in a drawer of a nightstand located at the foot of the bed of two unmarried people who lived together. No inference there could be drawn as to which, or if both, possessed the marijuana. Here, the narcotic was in such a place and was found under circumstances from which an inference could be properly drawn that both defendants were aware of its existence and nature and that they were in joint possession.

Further, both Hoods testified, denying any knowledge of the heroin. Disbelief of their sworn testimony, along with other evidence, can be the basis of a finding that they in fact possessed the requisite knowledge. *See* United States v. Cisneros, 448 F.2d 298, 305 (9th Cir. 1971).

■ Mrs. Hood also argues that the government improperly introduced evidence of another crime committed by her. In the prosecutor's opening statement and in the testimony of one officer, reference was made to the pills, resembling dangerous drugs, found in her purse. The government counters by asserting that the prosecutor's references were to assist the jurors in understanding the continuity of events on the night in question. We do not think that this was evidence of another crime which would mandate a reversal of Mrs. Hood's conviction. Nor do we think, after reviewing the record, that the trial court abused its discretion in asking Mrs. Hood certain questions regarding the pills contained in her purse.

■ In his opening statement, the prosecutor stated that the officers found

money on Mrs. Hood in denominations of 28 $5, 14 $10 and 2 $20 bills and that an agent of the Bureau of Narcotics and Dangerous Drugs would testify that these are the denominations in which narcotics are usually bought. That evidence was not produced. Mrs. Hood testified that she received the money from selling raffle tickets. The prosecutor's comment was not reversible error. The jury was instructed not to consider the statements of counsel as evidence and the effect of the statement is de minimis in relation to the total case.

The Hoods' final contention is that the trial judge erred in giving or failing to give several instructions. However, when the trial court asked, out of the presence of the jury, if counsel had any objections to the instructions, neither counsel for the Hoods objected to the instructions, or lack of instructions, which they now claim constitute error. Absent plain error, the Hoods may not now complain. Fed.R.Crim.P. 30 and 52(b); White v. United States, 394 F.2d 49 (9th Cir. 1968). We find none.

Affirmed.