UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald Charles McGREGOR,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles James WILSON,
Defendant-Appellant.

Nos. 75–2083, 75–2053.

United States Court of Appeals,
Ninth Circuit.

Jan. 9, 1976.

Rehearing and Rehearing En Banc
Denied March 29, 1976.

Walter B. Nash, III (argued), of Waterfall, Economidis, Caldwell & Hanshaw, Tucson, Ariz., for appellant Wilson.

James M. Wilkes (argued), Tucson, Ariz., for appellant McGregor.

James E. Mueller, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

OPINION

Before BROWNING and WALLACE, Circuit Judges, and WILLIAMS,* District Judge.

WALLACE, Circuit Judge:

McGregor and Wilson appeal their convictions for transporting stolen gold

coins in foreign commerce in violation of 18 U.S.C. § 2314. We affirm.

McGregor and Wilson entered the port of entry at Lukeville, Arizona, from Mexico on July 11, 1975. During a search of their car, the immigration inspector discovered 2004 gold coins in an ice chest beneath ice and cold beer. After learning that the coins matched the description of coins believed to have been stolen in San Diego, McGregor and Wilson were arrested. Subsequent searches revealed one gold coin in the wallet of McGregor, the passenger, and four gold coins in the car under the front passenger seat.

McGregor and Wilson raise three issues which should be discussed: [1] whether the evidence was sufficient to establish the elements of the offense, whether the trial judge improperly refused to ask prospective jurors certain questions on voir dire and whether the trial judge improperly restricted cross-examination of a government witness.

I. Sufficiency of the Evidence

The evidence was sufficient to establish that the coins were stolen. Jamerson, an employee of a San Diego coin dealer, testified that the 2004 coins seized from McGregor and Wilson were the same types of coins, item for item, as the coins missing from his employer's apartment. He was able to identify some of the coins specifically. He also testified that the containers seized from McGregor and Wilson were the ones used by his employer and identified the inventory markings on the containers as being in his own handwriting. Jamerson stated that the coins were in his employer's possession on Saturday morning, January 4, 1975, when he left work but were missing on Monday morning, January 6. The employer occasionally entered into small transactions over the weekend, although never without leaving

---

* Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation.

1. A fourth claim that certain documents were introduced into evidence without proper au-

thentication, is without merit. The objection raised at trial to the admission of this evidence was not on grounds of lack of authentication but on grounds of relevancy. The documents were relevant.

930

a written record. No such written record was found and Jamerson knew of no transaction on the weekend in question (the employer was deceased at the time of the trial).

Viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Celestine*, 510 F.2d 457, 459 (9th Cir. 1975), this evidence is sufficient to support an inference that the coins were stolen. In *Lake v. United States*, 375 F.2d 442 (9th Cir. 1967), we held that evidence that a compressor was present on the owner's lot at the time of its monthly inventory in May but was missing in June was sufficient to support an inference that it had been stolen. In a similar vein, the Second Circuit has held that the " 'unexplained disappearance of carefully-handled, closely-guarded documents suffices to support an inference of theft.' " *United States v. Jacobs*, 475 F.2d 270, 279 (2d Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973), *quoting United States v. Izzi*, 427 F.2d 293, 297 (2d Cir.), *cert. denied*, 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 794 (1970).

The evidence was also sufficient to establish that McGregor and Wilson knew the coins were stolen. We have held that, absent a satisfactory explanation, the possession of recently stolen property supports an inference of knowledge that it is stolen. *United States v. Ellison*, 469 F.2d 413, 415 (9th Cir. 1972); *United States v. Garrett*, 457 F.2d 1311, 1312 (9th Cir. 1972). Wilson was the driver and had signed the application for a Mexican vehicle permit. This evidence, plus the fact that the beer cooler in which the coins were hidden was so heavy that it probably required two people to handle, supports an inference that Wilson had knowing possession of the coins. *United States v. Martinez*, 514 F.2d 334, 338–41 (9th Cir. 1975); *United States v. Hood*, 493 F.2d 677, 681 (9th Cir.), *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974). McGregor

was only a passenger and cannot be held to possess the coins by reason of that fact alone, *United States v. Hood, supra,* 493 F.2d at 681. Here, however, in addition to the weight of the beer cooler probably requiring two people to lift it, one gold coin was found in his wallet, the coins were hidden in the beer cooler to which he had access, four gold coins were found under the passenger seat and he was nervous at the port of entry. This evidence supplies a rational basis for attributing possession of the coins also to McGregor. *See id.*

*United States v. Rappaport*, 312 F.2d 502 (2d Cir. 1963), where possession was held to be insufficient to support an inference of knowledge that securities were stolen, is distinguishable. In that case, there was one year between the theft and defendant's possession and the openness with which the defendant negotiated the stolen securities, along with other circumstances, negated the inference of knowledge. Here, on the other hand, there were only six months between the theft and the arrest and the circumstances of the seizure, McGregor's nervousness, the coins being hidden in the beer cooler and the failure to declare the coins, all tended to support rather than negate the inference of knowledge.

## II. Voir Dire

Before trial, counsel for Wilson submitted 34 proposed voir dire questions to be directed to prospective jurors. Wilson assigns the court's refusal to ask eight of these questions as error. Six of these proposed questions concerned the prospective jurors' abilities to base their decision on their own consciences and not to be swayed by the opinions of a majority. Whether it would be error not to cover this subject need not be reached as the substance of these questions was adequately covered by the questions propounded by the court. The two remaining questions asked whether the prospective jurors would give undue weight to the testimony of police officers merely because of their official position. It is the refusal to ask these questions that

Wilson most strenuously advances as error.

■■ Federal Rule of Criminal Procedure 24(a) commits the scope of voir dire to the sound discretion of the trial judge. *United States v. Holley,* 493 F.2d 581, 584 (9th Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974); *Haslam v. United States,* 431 F.2d 362, 364 (9th Cir. 1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). This discretion is not abused as long as the demands of essential fairness are met. *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). While it has been held that the failure to ask prospective jurors questions similar to these latter two which Wilson proposed is reversible error, *see, e. g., Brown v. United States,* 119 U.S. App.D.C. 203, 338 F.2d 543, 544–45 (1964); *Sellers v. United States,* 106 U.S. App.D.C. 209, 271 F.2d 475 (1959), that precise question is not before us and we hold that the court did not abuse its discretion on the facts of this case.

First, the record reflects no restrictions placed upon Wilson's attorney when he was allowed to examine the prospective jurors. Second, those prospective jurors who were related to or knew police officers were carefully questioned by Wilson's counsel concerning any possible biases that might arise from these relationships. Third, there was no conflict between the testimony of official and lay witnesses and no police officer's credibility was seriously questioned. Finally, the most hotly-contested element of the government's case, whether the coins were stolen, was established primarily by the testimony of the coin dealer's employee, a layman. We fail to see how Wilson could have been prejudiced in these circumstances, thus obviating any need to decide whether this Circuit will adopt the rule enunciated in *Sellers v. United States, supra.*

## III. Cross-examination of Government Witness

McGregor and Wilson claim that their rights of confrontation were denied by the trial judge's restriction of cross-examination of Jamerson. The coin dealer, Stillman, was murdered in his apartment, where the coins were kept, the same weekend as the coin theft. At the request of McGregor and Wilson, the parties stipulated that the murder would not be mentioned to the jury but the attorney for Wilson subsequently attempted to elicit testimony from Jamerson concerning some possible bizarre behavior of Stillman. Counsel intended to suggest to the jury that Stillman had made an unrecorded sale, buried the coins or given them away as alternatives to the inference of their having been stolen. Out of the presence of the jury, the trial judge warned counsel that if this line of questioning were pursued, he would allow the government to show all the circumstances of the disappearance of the coins, including Stillman's murder. Wilson's attorney chose not to pursue the matter.

■ Limitation of cross-examination does not violate an accused's Sixth Amendment rights unless there has been a clear abuse of discretion. *United States v. Haili,* 443 F.2d 1295, 1299 (9th Cir. 1971). Here, Wilson was never prevented from asking the proposed questions. However, conditioning continued enforcement of the stipulation upon a limitation of cross-examination might constitute such an abuse of discretion if the trial court would have committed error had it relieved the government from the stipulation. As the trial judge had discretion to relieve the government from the stipulation, the trial court did not commit reversible error.

■ Stipulations are entered into in order to dispense with proof over matters not in issue, thereby promoting judicial economy at the convenience of the parties. 9 J. Wigmore, Evidence §§ 2588, 2597 (3d ed. 1940). Courts thus enforce stipulations as a general rule, absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement. *Id.* at § 2590. A district court's decision to relieve a party from a stipulation will

not be reversed when the party has entered into it by inadvertence and the opposing party would not be prejudiced (i. e., treated unfairly) by setting the agreement aside. *See Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403, 444, 22 S.Ct. 698, 46 L.Ed. 968 (1902); *Brast v. Winding Gulf Colliery Co.*, 94 F.2d 179, 181 (4th Cir. 1938); *see also The Hiram*, 14 U.S. (1 Wheat.) 440, 444–45, 4 L.Ed. 131 (1816).[2]

All the parties knew that the coins had disappeared, apparently at the time of Stillman's murder. McGregor and Wilson admitted, in statements which had been ruled inadmissible, that they had obtained the coins from the persons who were later convicted of the crime. The government entered into the stipulation at the request of McGregor and Wilson in order to protect them from the prejudice resulting from the mention of Stillman's murder during any collateral inquiry. There could have been no intent on the part of the government to preclude mention of the murder if McGregor and Wilson were free to argue, on the material issue whether the coins were stolen, alternative explanations for the disappearance of the coins since these explanations would be far less believable if the jury were aware of Stillman's murder. If, on the other hand, this were the meaning of the stipulation, it would have been entered into inadvertently by the government.

■ Neither McGregor nor Wilson would have been prejudiced. had the government been freed from the stipulation. It, therefore, follows that the resulting conditional limitation of cross-examination was not an abuse of discretion. *Cf. United States v. Carrion*, 463 F.2d 704, 707 (9th Cir. 1972).

Affirmed.

**2.** *Weilbacher v. J. H. Winchester & Co., Inc.*, 197 F.2d 303, 305 (2d Cir. 1952), is not to the contrary. There the trial court erred in relieving one party from a stipulation when there was no inadvertency but merely a gamble for a better settlement.