**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Freddie Lee ABRAHAM,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David Lee HUGULEY,**
**Defendant-Appellant.**

Nos. 79–1520, 79–1546.

United States Court of Appeals,
Ninth Circuit.

April 18, 1980.

John R. Miller, Salem, Or., argued for defendants-appellants; Stuart I. Teicher, Portland, Or., on the brief.

Ellen F. Rosenblum, Salem, Or., argued for plaintiff-appellee; Peter Robinson, Asst. U. S. Atty., Portland, Or., on the brief.

Before DUNIWAY and ANDERSON, Circuit Judges, and BONSAL,* District Judge.

BONSAL, District Judge:

David Lee Huguley ("Huguley") and Freddie Lee Abraham ("Abraham") appeal from their convictions for armed bank robbery in violation of 18 U.S.C. § 2113(d). We affirm the conviction of Huguley and vacate the conviction of Abraham.

On the afternoon of April 23, 1979, two men, one of whom was armed, robbed $918 from the North Lombard Branch of the Lincoln Savings and Loan Association ("the bank") in Portland, Oregon. On April 25, 1979, a grand jury indicted Huguley and Abraham in a one-count indictment, charging them with armed bank robbery in violation of 18 U.S.C. § 2113(d). Both defendants pleaded not guilty and were convicted following a jury trial.

A teller from the bank testified that at approximately 1:15 P.M. on April 23, 1979, two black men, one carrying a long-barreled revolver and wearing a nylon stocking cap over his face and the other wearing a gray mask, robbed the bank. The branch supervisor of the bank testified that the two robbers, one carrying a long-barreled revolver and the other wearing an orange sweatshirt, left the bank through a back door, went through a parking lot, crossed Vincent Street and went between two houses on the far side of Vincent Street. A witness who was in his residence on Vincent Street testified that he saw two dark-skinned men, one wearing a gray mask, running from the direction of the bank to a red Toyota. The witness furnished police with the license number of this car, and it was found to be a 1969 red Toyota ("the red Toyota") owned by Huguley.

A police officer testified that, approximately 25 minutes after the robbery, he saw the red Toyota with two black men inside on North Chatagua and Juneau Streets. The officer ordered the driver to stop, but the driver ignored the order and a car chase followed, ending at the end of a dead-end street. Two police officers testi-

* Hon. Dudley B. Bonsal, United States Senior District Judge for the Southern District of New York, sitting by designation.

fied that the driver and passenger fled the car simultaneously and the driver, brandishing a long-barreled revolver, vaulted a fence and escaped. A woman at the scene testified that she saw a black man wearing a cap vault a fence and, on June 5, 1979 in a lineup, she identified Huguley as that man.

The passenger was seen leaving the car and, three to five minutes later, he was found hiding in a nearby field and was arrested. He told the arresting officer that he was Freddie Abraham. An FBI Agent testified that when Abraham was advised that he was under arrest for bank robbery, he stated that he knew nothing about the bank robbery and that he had been riding with "Johnny Johnson." Abraham was driven to the bank for identification, but no witnesses to the robbery or the getaway could identify him. An FBI Agent testified that on the afternoon of the robbery, Abraham stated: that he spent the previous night and morning of the robbery until approximately 1:15 P.M. at the residence of Henrietta Clark; that after leaving Clark's residence, he walked to the residence of another person who was not at home when he arrived; that he then met and took a car ride with "Johnny Johnson," a casual acquaintance whom he had met at a local bar; that the car was chased by police; and that he knew Huguley as a casual acquaintance but had not seen him recently. Later in the same interview, he denied that he knew Huguley and denied that he had previously stated that Huguley was an acquaintance. The existence of "Johnny Johnson" was never confirmed.

Toni Ide, a friend of Sheila Abraham (Abraham's sister and Huguley's wife), testified that Abraham and Huguley were acquainted in April, 1979.

An FBI Agent investigating the area where the red Toyota was abandoned on the afternoon of the robbery found a "brown felt round cap" that was alleged to be identical to a cap worn by Huguley in photographs of him, which was dry even though it had been raining until a short time before the cap was found. The cap and photographs were received into evidence.

On May 3, 1979, Huguley was arrested at Henrietta Clark's residence. The arresting FBI Agent testified that after Huguley identified himself as "Charley Johnson," he attempted to escape. Following this attempt, he was told he was under arrest for bank robbery, and he stated, "you guys say I did, but I didn't. A friend of mine had my car."

Toni Ide, who was present with Sheila Abraham and Henrietta Clark when Huguley was arrested, testified that following Huguley's arrest, Sheila Abraham and Henrietta Clark gave her a purse containing several items, including a gun that Ide believed came from under the mattress where Huguley had been lying immediately prior to his arrest. There was testimony that this gun was similar to the long-barreled revolver used by one of the robbers in the robbery and to the long-barreled revolver brandished by the driver of the red Toyota at the time of his escape.

Huguley sought to establish an alibi defense. Belyn J. Bassinger testified on Huguley's behalf that, on the day of the robbery, Huguley was in her apartment, except when he left for short periods to make telephone calls; that Huguley had promised to drive her to prospective employers but was unable to do so because his car was being repaired; and that, late in the afternoon, she took a bus to a restaurant called "Eve's Buffet" to apply for a job. Another defense witness testified that on the day of the robbery, he was in his apartment that overlooked the parking lot where Huguley's car was kept and that Huguley called him four times asking if his car had been returned to the lot.

During the government's rebuttal case, a clerk in the Auto Reference Section of the Portland Police Bureau testified that at 3 P.M. on the day of the robbery, she received a telephone call from a woman, identifying herself as Henrietta W. Clark, who reported the theft earlier that day of a car belonging to Huguley. Another rebuttal witness testified that she was the manager of "Eve's Restaurant" and that she interviewed Belyn

Bassinger for a job but the interview could not have taken place on the day of the robbery.

Both Huguley and Abraham contend that the evidence, which was circumstantial, was insufficient to support their convictions.

██ The jury's verdict must be affirmed if " 'the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt.' " *United States v. Jones*, 592 F.2d 1038, 1041 (9th Cir. 1979) (quoting *United States v. Nelson*, 419 F.2d 1237, 1242 (9th Cir. 1969) ). The evidence against Huguley and Abraham must be considered separately.

### Huguley

Treating the evidence against Huguley most favorably to the government, the jury could reasonably find:

(1) the red Toyota was used by the bank robbers;

(2) the red Toyota belonged to Huguley;

(3) approximately 25 minutes after the robbery, Huguley was driving the red Toyota;

(4) Huguley failed to obey a police officer's order to stop, and fled;

(5) after the car reached a dead-end, Huguley escaped, brandishing a long-barreled revolver;

(6) the long-barreled revolver taken from under the mattress where Huguley had been lying immediately prior to his arrest was the one used at the bank robbery and brandished by the driver of the red Toyota immediately prior to his escape; and

(7) Huguley gave a fictitious name and attempted to escape when he was approached by an FBI Agent immediately prior to his arrest.

██ The long-barreled revolver taken from under the mattress where Huguley had been lying immediately prior to his arrest links Huguley to the robbery and the escape. We find that this evidence, together with the other circumstantial evidence, including the evidence that Huguley fled from law enforcement officials and offered false exculpatory statements, is sufficient to support a rational conclusion by the jury that Huguley is guilty beyond a reasonable doubt. *See United States v. Jones, supra* at 1041; *United States v. Jackson*, 572 F.2d 636 (7th Cir. 1978); *United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975).

██ Huguley contends that the cap found on the afternoon of the robbery near where the red Toyota was abandoned and the photographs showing Huguley allegedly wearing the same cap should not have been received in evidence because the unfair prejudice to him outweighed the probative value. Fed.R.Evid. 403. However, it was important to the government's case to establish that the red Toyota, which was owned by Huguley, was driven by him when it was abandoned, and the cap, together with the photographs, were relevant for this purpose. The testimony that the cap was dry was circumstantial evidence that it was recently dropped by someone in the red Toyota and the photographs were evidence that the cap belonged to Huguley. The trial judge stated, "This cap is a distinctive cap. It's not one that you see very often." We feel that the relevance of this evidence outweighs its prejudicial effect. Fed.R.Evid. 403. Moreover, the trial judge's ruling was a matter of discretion and we find no abuse of discretion.

██ Huguley contends that it was reversible error to admit certain hearsay testimony. The testimony in question is that of Connie C. McLoughlin, a clerk in the Auto Reference Section of the Portland Police Bureau, offered during the government's rebuttal case. McLoughlin testified that on the day of the robbery, she received a telephone call from a woman, identifying herself as Henrietta W. Clark, who reported the theft earlier that day of a car belonging to Huguley. There was prior testimony of an FBI Agent that Huguley had told him that a friend had his car and there was prior testimony of Belyn Bassinger that Huguley's car was being repaired on the

day of the robbery. McLoughlin's testimony contradicts Huguley's statement and Bassinger's testimony. While McLoughlin's testimony was hearsay insofar as it was offered to establish that the caller was Henrietta Clark, it was relevant. Considering all the other evidence implicating Huguley, we conclude that, if it was error to receive in evidence McLoughlin's testimony, it was harmless error. *See United States v. Weiner*, 578 F.2d 757 (9th Cir. 1978); *United States v. Kazni*, 576 F.2d 238 (9th Cir. 1978); *United States v. Wells*, 525 F.2d 974 (5th Cir. 1976).

In view of the foregoing, the conviction of Huguley is affirmed.

### Abraham

■ Abraham contends that the evidence against him was insufficient,[1] since he was not identified by any witnesses to the robbery or the getaway; at the time of his arrest, his clothing was different from that allegedly worn by the robber; and no weapons or money from the robbery were found in his possession.

Treating the evidence against Abraham most favorably to the government, the jury could reasonably find:

(1) Approximately 25 minutes after the robbery, Abraham was a passenger in the red Toyota;

(2) Abraham hid from law enforcement officials;

(3) Abraham's statement that "Johnny Johnson" was driving the red Toyota was false, since there was no other evidence of the existence of "Johnny Johnson" and there was substantial evidence that Huguley was driving the red Toyota; and

(4) Abraham's denial that he knew Huguley was false, since they were brothers-in-law and had been seen together around the time of the robbery.

■ Although there is no doubt that Abraham was present with Huguley in the red Toyota approximately 25 minutes after the robbery, mere association or presence after a crime has been committed is not sufficient to establish guilt. *See United States v. Camacho*, 528 F.2d 464 (9th Cir. 1976); *United States v. Johnson, supra* at 823–24 (2d Cir. 1975). Moreover, flight and false exculpatory statements standing alone will not lead to a conviction absent other independent evidence. *See United States v. Jackson, supra; United States v. Johnson, supra* at 824.[2] The 25 minutes between the robbery and the commencement of the chase of the red Toyota was sufficient to enable Huguley to drop off the other robber, dispose of the money and pick up Abraham as a passenger. The likelihood that this occurred is underscored by the fact that no gray mask was found in Abraham's possession or in the red Toyota and that when he was arrested, he was not wearing the orange sweatshirt which one witness to the robbery testified was worn by the robber wearing a gray mask. Therefore, as to Abraham, the circumstantial evidence is not sufficient to enable a rational jury to conclude that he was guilty beyond a reasonable doubt. The circumstantial evidence against Huguley may have spilled over onto Abraham in the jurors' minds. Moreover, while the trial judge charged the jurors that they should consider each defendant separately, he did not marshal the evidence

---

1. Abraham argued that the trial judge erred in denying his motion for severance. However, since the indictment charged both Huguley and Abraham with the same robbery and the jury was instructed to consider each of them separately, the trial judge properly refused to sever Abraham. *See United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978); *United States v. Gaines*, 563 F.2d 1352, 1355–56 (9th Cir. 1977).

2. Our decision in *United States v. Dixon*, 562 F.2d 1138, 1142 (9th Cir. 1977), is not to the

contrary. In that case we cited the general rule which is also referred to in *United States v. Jackson, supra* at 639, as follows: "Consciousness of guilt, and therefore guilt itself, can be inferred from this conduct," referring to a defendant's attempt to hide and flee when he and others were being arrested for selling narcotics. We emphasized that there was other evidence which taken together with the evidence of concealment and flight made the evidence sufficient to sustain the conviction.

or contentions separately as to each defendant.

*The conviction of Huguley is affirmed. The conviction of Abraham is vacated and the case remanded with instructions that the indictment be dismissed as to Abraham.*