948 F.2d 1293
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria Leticia GARCIA-GARCIA, Defendant-Appellant.
 No. 90-50287.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1991.*
Decided Dec. 3, 1991.
 
 Before FARRIS, PREGERSON and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Maria Leticia Garcia-Garcia ("Garcia") appeals her conviction following a jury trial for importation of 93.27 kilograms of marijuana and possession with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 952, and 960. Garcia argues that the evidence introduced at trial was insufficient to support a finding of guilt on either charge, and that the district court erred in denying her motion for acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. We have jurisdiction under 28 U.S.C. § 1291 and reverse both convictions.
 
 FACTS
 
 3
 On March 31, 1989 at approximately 6:35 p.m., Garcia, the driver and sole adult occupant of a 1984 white Monte Carlo, arrived at the Calexico, California port of entry. Immigration Inspector Joseph E. Bishop ("Bishop") was on duty at the primary inspection lanes. He noticed that Garcia was accompanied by a small child and that the car was unusually clean. Bishop asked Garcia her citizenship status and whether she was bringing anything in from Mexico. Garcia stated that she was not bringing anything in from Mexico and produced a valid amnesty card.
 
 
 4
 Bishop testified that although Garcia answered his questions calmly and cordially, he suspected contraband was contained in the vehicle so he asked Garcia to open the trunk. Garcia responded to Bishop's request very casually and without any resistance or objection. She did not appear nervous, asked no questions, and complied with his request immediately. Bishop testified that as the trunk was being opened, Garcia appeared to be watching carefully for anything "risky" that might be inside. Garcia opened the trunk approximately 18 to 22 inches wide and, upon seeing the contents, appeared genuinely shocked and surprised. She then attempted to close the trunk. Before she could close it, Bishop was able to see "plastic type surfaces" around the lip of the trunk.
 
 
 5
 Bishop testified that when the trunk was opened, Garcia had a sudden and radical change in demeanor. She became very nervous, excited, and repeatedly attempted to close the trunk until Bishop ordered her to step away from the vehicle. Bishop then lifted the trunk lid completely and saw several round bundles wrapped in plastic inside the trunk. Bishop asked Garcia to tell him what was in the trunk, but Garcia stated she did not know. Garcia also denied ownership of the vehicle. Bishop then referred Garcia to Agent Donald Hylton at the secondary inspection area.
 
 
 6
 At the secondary area, Agent Hylton ordered a strip search of Garcia and had a narcotics dog sniff the vehicle. No contraband, money, or weapons were found in the strip search of Garcia. The dog, however, alerted to the vehicle's trunk. Agent Hylton got inside the vehicle to move it to another location, and he noticed an odor of marijuana. The trunk of the vehicle was then opened. The trunk contained 56 packages of marijuana, with a total weight of 205 pounds and a street value of $140,000.00.
 
 
 7
 In a post-arrest interview with DEA Agent Lionel Lizzaraaga, Garcia denied any knowledge of contraband in the vehicle. She explained that she had borrowed the vehicle from a friend, Jaime Aguilar, whom she had worked with in the fields. Garcia said she borrowed the car in order to visit a friend named Cheela who lived in Calexico and who was going to help her look for work.
 
 
 8
 Although Garcia did not testify, several witnesses appeared on her behalf at trial. Isidra Contreras ("Cheela") testified that she was expecting Garcia to arrive on March 31, 1989, in the evening, so that she could help Garcia find work in the fields. Maria Vargas testified that she heard Jaime Aguilar offer Garcia the use of his car so that she could go to Cheela's, and that Garcia accepted the offer to use the car because her young son was with her. Ishmael Castro testified that Jaime Aguilar told Garcia to use his car, instead of taking a taxi or walking, because it was such a hot day. He saw Garcia accept the keys from Aguilar and drive away. Elizabeth Quintero testified that Jaime Aguilar told Garcia that she could borrow his car in order to visit Cheela.
 
 DISCUSSION
 
 9
 "We will uphold a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each element of the crime charged." United States v. Sanchez-Mata, 925 F.2d 1166, 1166 (9th Cir.1991). The court shall order the entry of judgment of acquittal "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a).[1]
 
 
 10
 An essential element of the criminal offense of importation of a controlled substance is a finding of actual knowledge by the defendant of the presence of the substance at the time of entry into the United States. 21 U.S.C. §§ 952, 960; see United States v. Martinez, 514 F.2d 334, 342 (9th Cir.1975). "A person may not be convicted of illegal possession unless he knows contraband is present and is capable of exercising dominion and control over the contraband." United States v. Penagos, 823 F.2d 346, 350 (9th Cir.1987). Garcia maintains that the evidence was insufficient to show that she knew of or possessed the contraband. We agree.
 
 
 11
 In the present case, no evidence exists to indicate knowing possession of the contraband. There are no inconsistencies or improbabilities in Garcia's story. Three witnesses testified for Garcia at trial and all three gave testimony that matched the explanation Garcia gave Agent Lizzaraaga in her post-arrest interview. Moreover, Garcia's explanation, that she borrowed the car so she would not have to walk or take a taxi, is not improbable or unbelievable.
 
 
 12
 The fact that a defendant is the driver of a contraband-laden vehicle, standing alone, is not sufficient to support a finding of knowledge. Martinez, 514 F.2d at 341 (9th Cir.1975). Garcia did not own the car. She had simply accepted Jaime Aguilar's offer to use it. This circumstance weakens any inference of Garcia's knowledge of or dominion and control over the contraband. See Sanchez-Mata, 925 F.2d at 1169; Penagos, 823 F.2d at 349-51 (insufficient evidence to support possession convictions where no evidence that defendant owned or leased any of the apartments or cars where cocaine was found).
 
 
 13
 Garcia's actions, both before and after the discovery of the contraband, are inconsistent with the actions of a person likely to have knowledge of contraband. At the border, Bishop testified that Garcia was very cooperative, cordial and friendly before discovery of the contraband. Cf. Walitwarangkul, 808 F.2d at 1354 (9th Cir.1987) (nervousness by defendant before discovery of contraband strengthened inference of knowing possession). Bishop stated that Garcia appeared genuinely shocked when the contraband was discovered in the trunk and then she became extremely nervous and excited. See Sanchez-Mata, 925 F.2d at 1167 (nervousness by defendant after discovery of contraband was not evidence of possession of contraband); cf. United States v. Murrieta-Bejarano, 552 F.2d 1323, 1325 (defendant's lack of surprise after discovery of marijuana supports inference of knowledge). Garcia complied with all of the inspectors' requests without hesitation. Cf. United States v. Diamond, 471 F.2d 771, 773 (1973) (evidence that defendant failed to stop when ordered to do so supports finding of possession), cert. denied, 412 U.S. 932 (1973).
 
 
 14
 The odor of marijuana inside Garcia's car could not support an inference of knowing possession because it was not shown that Garcia would recognize the smell of marijuana and she did not have any prior convictions. Cf. Sanchez-Mata, 925 F.2d at 1169 (government used prior conviction to establish defendant's knowledge of what marijuana smelled like).[2]
 
 CONCLUSION
 
 15
 The evidence is insufficient to enable a rational jury to determine beyond a reasonable doubt that Garcia possessed or had knowledge of the presence of the marijuana in the vehicle. Accordingly, we reverse both convictions.
 
 
 16
 REVERSED.
 
 FARRIS, Circuit Judge, dissenting:
 
 17
 The majority would reverse based on what in my opinion is its own credibility finding. The record requires that I dissent.
 
 The record shows:
 
 18
 (a) The car Garcia was driving at the time of arrest contained over 200 pounds of marijuana in a locked trunk. The fact that Garcia was the driver of a contraband-laden vehicle, per se, does not support a finding of guilty knowledge. United States v. Martinez, 514 F.2d 334, 338-39 (9th Cir.1975) (dominion and control critical to inference of knowledge from fact of driving). Nevertheless, even though her dominion and control over the car had been acquired shortly before her trip to the border, her exclusive dominion and control during that trip, coupled with other inculpatory evidence, could lead a rational jury to find that she had knowledge of the car's contents.
 
 
 19
 (b) Her demeanor before discovery of the contraband was consistent with that of a person with knowledge. A customs officer testified that Garcia was cordial and cooperative before discovery. An unfriendly or nervous demeanor would have raised suspicion in the eyes of such an officer. The majority cites United States v. Walitwarangkul, 808 F.2d 1352, 1354 (9th Cir.1987), to support its conclusion that Garcia's demeanor was inconsistent with an inference of guilty knowledge. But that case only held that a nervous demeanor before discovery could support an inference of guilty knowledge. It does not exclude the possibility that an affable demeanor can also support a finding of guilty knowledge. Such a demeanor is logically consistent with a desire to smuggle contraband without detection under the eyes of customs officials. I do not suggest that all criminal defendants in these circumstances are placed in a catch-22 whereby any demeanor evidence will support conviction. But Garcia's calm demeanor, coupled with the other evidence against her, is sufficient to convince a rational factfinder that she had guilty knowledge of the car's contents.
 
 
 20
 Other conduct of Garcia's before discovery is consistent with a finding of guilty knowledge. The record reflects that "as the trunk was being opened, Garcia appeared to be watching carefully for anything 'risky' that might be inside." It also states that she cracked the trunk and observed "plastic type surfaces" within. This caused her to become agitated. She attempted to close the trunk before the officer could make a close inspection of the trunk's contents. The officer asked her to step away from the car, and asked her what the trunk contained. Garcia said she did not know. A rational trier of fact could believe that her answer was inconsistent with her conduct and with the inference that she was free of guilty knowledge.
 
 
 21
 All of this occurred before the officer conclusively determined that the packages contained contraband. It supports an inference of guilty knowledge.
 
 
 22
 (c) The passenger compartment of the car smelled of marijuana. The majority dismisses this evidence because the government did not show that Garcia could recognize the smell of marijuana and because she had no prior convictions. However, she apparently recognized the contraband when the trunk was opened. She recognized it despite the fact that it was contained at the time in plastic wrapping, and was not directly visible to the observer. It is not irrational to infer that those who recognize concealed contraband, such as marijuana, will be able to recognize its distinctive characteristics, such as odor. The probative effect of the smell permeating the car was a factor to be considered by a rational factfinder. It is not for a court on appeal to dismiss their finding.
 
 
 23
 (d) Garcia lied to customs officials when asked if she owned a car. It is true that United States v. Abraham, 617 F.2d 187, 191 (9th Cir.), cert. denied, 447 U.S. 929 (1980), noted that "false exculpatory statements standing alone will not lead to a conviction absent other independent evidence." But in light of the foregoing "independent evidence," Garcia's lie bolsters the contention that a rational jury could have determined that she had guilty knowledge.
 
 
 24
 The majority, reviewing the evidence, as it must, in the light most favorable to the prosecution, finds the evidence insufficient to support a rational inference that Garcia had guilty knowledge of the car's contents. I respectfully disagree. I would affirm.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government contends that Garcia waived her right to challenge the denial of her Rule 29 motion by presenting her defense. Appellee's Brief at 7. This contention is meritless. Garcia preserved her right to appeal the denial of her motion by renewing the motion at the close of trial. See United States v. Ramirez, 880 F.2d 236, 238 (9th Cir.1989)
 
 
 [2]
 The government asserts that Garcia's claim that she did not have a car was false because officers found a receipt of sale for a car Garcia allegedly bought. The government argues that such a lie provides "sufficient grounds to support a guilty finding." Appellee's Brief at 8. The government relies on United States v. Abraham, 617 F.2d 187 (9th Cir.), cert. denied, 447 U.S. 929 (1980). Nevertheless, Abraham expressly states that "false exculpatory statements standing alone will not lead to a conviction absent other independent evidence." Id. at 191