72 F.3d 136
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rafael LOREA, Defendant-Appellee.
 No. 94-50032.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 12, 1995.*
Decided Dec. 7, 1995.
 
 1
 Before: T.G. NELSON and KLEINFELD, Circuit Judges; LEGGE, District Judge***
 
 
 2
 MEMORANDUM**
 
 I.
 
 3
 Appellant Rafael Lorea was arrested while crossing into the United States as a passenger in a truck, in which 66 pounds of marijuana and 2.2 pounds of cocaine had been secreted. A federal grand jury indicted appellant on eight counts. Following a jury trial, appellant was convicted of aiding and abetting the importation of cocaine and marijuana (counts 2 and 6), and aiding and abetting the possession of cocaine and marijuana with intent to distribute (counts 4 and 8). The jury acquitted appellant on the four other counts of conspiracy.
 
 
 4
 Lorea appeals the judgment of conviction. The district court had jurisdiction under 18 U.S.C. Sec. 3231. This court has jurisdiction of this appeal under 28 U.S.C. Sec. 1291.
 
 
 5
 Appellant contends that there was insufficient evidence to support his conviction, and that the prosecutor committed misconduct. We agree that the conviction must be REVERSED because the jury could not reasonably and rationally conclude that the evidence showed beyond a reasonable doubt that appellant intended by his actions to assist the crime. Because we reverse on that ground, we need not consider appellant's argument regarding prosecutorial misconduct.
 
 II.
 
 6
 In reviewing the sufficiency of the evidence, this court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Segura-Gallegos, 41 F.3d 1266, 1268 (9th Cir.1994) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). Review under this standard requires the court to resolve conflicts of evidence and draw reasonable inferences in a manner that supports the verdict. United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989). The evidence is viewed in the light most favorable to the verdict so as to "respect the exclusive province of the jury" to judge the demeanor of witnesses and credibility of evidence. Id. (quoting United States v. Ramos, 558 F.2d 545, 546 (9th Cir.1977)).
 
 III.
 
 7
 Appellant's challenge to the sufficiency of the evidence requires a review of the evidence to determine whether the jury could have resolved conflicts of evidence, made credibility determinations, and drawn reasonable inferences from the evidence so as to support the convictions for importation and possession of marijuana and cocaine.
 
 
 8
 A U.S. Customs Canine Enforcement officer and a drug-sniffing dog were walking among the cars waiting to cross the border into the United States. SECR[1] at 9-10. The dog gave an "alert" on the truck. Id. at 11. Based on the alert, Customs Inspector Enrique Jiminez stopped the truck. Id. at 28. The driver was Aldo Garcia-Soberanis.[2] The other occupants of the passenger compartment were Rafaela Ayvar-Soberanis and her nine-year-old son. Seated in the rear of the pickup were appellant and two children who were the female passenger's nieces. Id. at 80.
 
 
 9
 Customs Inspector Walter McDaniel asked appellant to get out of the truck. McDaniel testified that appellant appeared nervous, was breathing very hard and sweating. Id. at 58-59. The inspector found nothing incriminating on appellant's body or clothing. Id. at 66.
 
 
 10
 Inspector McDaniel noticed fresh paint on the bed of the truck and new nuts and bolts under the truck. He rapped on the truck bed and it did not sound normal. Another inspector cut open the truck bed and exposed the marijuana and cocaine. Id. at 48-52. The agents then arrested the driver and appellant.
 
 
 11
 Appellant made conflicting statements to the customs agents following his arrest. Appellant initially told Customs Agent Carlos Cuellar that he did not know anything about the drugs, and that he did not know the driver or the other passengers. Appellant said that he was just a passenger who had offered to pay for gas for a ride to Los Angeles. Id. at 96. Appellant told Cuellar that he was in Mexico delivering a mattress. He said that his business was finding discarded furniture and delivering it for sale to Mexico. Appellant, a resident of Los Angeles, had to stay an extra day in Mexico because he had left his immigration papers at home. Appellant's wife travelled from Los Angeles to bring him his immigration papers. Id. at 97. Appellant said he spent the extra day looking for buyers of furniture. Appellant said his wife and children had already taken a bus back to Los Angeles.
 
 
 12
 Agent Cuellar interviewed the adult female passenger, Rafaela Ayvar-Soberanis, out of the presence of appellant. She said she knew appellant. Cuellar brought Ayvar-Soberanis into the room with appellant, who again denied knowing her. Ayvar-Soberanis responded that appellant knew her and she did not know why appellant was lying. Appellant broke down and cried. Appellant said that he was sorry he had lied and that he had been scared, but he would tell the truth. Appellant then stated that he knew the woman and the driver of the truck. He said he had been visiting someone at a hospital with the others. Id. at 101. Appellant said he had stayed at the house of an acquaintance with the driver and other passengers. At the house, he overheard a conversation in which one man said truck was "loaded and ready to go." Id. at 113. Later in the same conversation, appellant recanted and said he had not overheard anyone say that the truck was "loaded and ready to go." He said he had assumed there was something illegal in the truck because two people were talking privately and had told him to go away when he approached. Id. at 114.
 
 
 13
 At trial, appellant testified that the day before his arrest he drove to Tijuana with a friend to deliver a mattress, but he could not return to the United States because he did not have his immigration card. Id. at 166-67. His friend drove the truck back and appellant stayed in Tijuana at the house of the woman to whom he had delivered the mattress. Id. at 171. At the house, he encountered the driver and the female passenger. Id. Appellant testified that based on what he heard and saw at the house, he "imagined" that there may have been contraband in the truck. Id. at 177. Despite his "hunch," he rode in the truck because he needed a ride to Los Angeles. Id. at 209, 211.
 
 
 14
 Appellant testified that he initially lied to the customs agents because "I was very, very scared.... The whole world caved in, and I felt something dark in my mind." Id. at 178.
 
 
 15
 Appellant testified on cross-examination that his wife and children were passengers in another car crossing the border at the same time as the white Toyota. Id. at 210. Appellant admitted on cross-examination that he had lied when he told customs agents that his family had taken a bus back to Los Angeles. Id. Appellant testified that after he was unable to return home without his immigration card, he spent the day "having fun," drinking sodas and eating tacos in Tijuana. Id. at 199-200. This testimony differed from his post-arrest statement that he had spent that time looking for furniture buyers. See id. at 96.
 
 
 16
 Appellant called two witnesses who largely corroborated his testimony: his wife, Margarita Perez, and his friend, Jose Antonio Ayvar. Appellant's wife testified that appellant drove from Los Angeles to Tijuana, called her from Tijuana and asked her to bring him his green card. Id. at 142. She and her three children got a ride to Tijuana, brought appellant his card, and returned to Los Angeles the same day. Id. at 143-44. Appellant's wife testified that the car she rode in, a red Escort, had six passengers and there was no room for her husband on the return trip to Los Angeles. Id. at 145. Her husband rode as a passenger in the back of the truck. Id.
 
 
 17
 Jose Antonio Ayvar testified that he drove with appellant from Los Angeles to Tijuana on March 5, 1993, to deliver a mattress to Ayvar's aunt. Id. at 234-35. Ayvar and appellant headed back to Los Angeles the same day, but appellant was unable to enter the country because he did not have his green card. Id. at 236. Ayvar returned to Los Angeles with appellant's truck. The next day, Ayvar drove back to Tijuana with appellant's wife and children to deliver the green card, and drove back to Los Angeles with appellant's family the same day. Id.
 
 IV.
 
 18
 The government's theory was that appellant aided and abetted the possession and importation of the drugs found in the truck.
 
 
 19
 A defendant is guilty of aiding and abetting if he (1) associated himself with a venture, (2) participated in it as something he wished to bring about, and (3) sought by his action to make it succeed. United States v. Ramos-Rascon, 8 F.3d 704, 711 (9th Cir.1993). However, this circuit has held that a passenger's mere presence in an automobile carrying drugs, even coupled with knowledge that drugs are present, does not make a passenger a conspirator or an aider and abettor. United States v. Sanchez-Mata, 925 F.2d 1166, 1168-69 (9th Cir.1991); United States v. Thomas, 453 F.2d 141, 143 (9th Cir.1971), cert. denied, 405 U.S. 1069 (1972).
 
 V.
 
 20
 To properly convict for aiding and abetting, the jury would have had to conclude from the evidence that appellant was (1) present in the truck, (2) had knowledge of the drugs, and (3) intended by his acts to assist in the possession and smuggling of drugs.
 
 
 21
 Appellant's presence in the car is uncontroverted. Viewed in the light most favorable to the government, the jury could also rationally infer knowledge of the presence of drugs from Agent Cuellar's testimony that appellant told him he overheard one man tell another that the truck was "loaded and ready to go." See SECR at 113.
 
 
 22
 However, the third element, intent by his acts to assist the crime, is missing from the evidence. There is no evidence that appellant participated in arranging the drug transaction, loaded the truck, drove the truck, acted as a lookout, or agreed to do anything. No fingerprints or other evidence (beyond his mere presence in the truck) connected appellant to the contraband. Id. at 66.
 
 
 23
 The government's theory was that appellant intended to assist the crime by riding in the truck for the purpose of making it "less suspicious looking" and more likely to pass customs. Id. at 264. The government produced no direct evidence that appellant was present in the truck for that purpose.[3] And a woman and three children were also in the truck, which would make the vehicle appear "less suspicious" without the presence of another male adult.
 
 
 24
 A jury may infer a defendant's criminal intent--the necessary third element for aiding and abetting--from the attendant circumstances without the benefit of direct evidence. United States v. Reese, 775 F.2d 1066, 1072 (9th Cir.1985). And there is no doubt that appellant lied and gave inconsistent statements. False exculpatory statements may properly be considered circumstantial evidence of consciousness of guilt. United States v. Perkins, 937 F.2d 1397, 1402 (9th Cir.1991). However, false exculpatory statements "standing alone will not lead to a conviction absent other independent evidence." United States v. Abraham, 617 F.2d 187, 191 (9th Cir.), cert. denied, 447 U.S. 929 (1980) (emphasis added). Lorea's lies might suggest a consciousness of guilt of conspiracy, but he was acquitted of that crime, and it is hard to see how he could be intending to help the driver bring the drugs across the border if he did not conspire to do so. His lying, in these circumstances, does not support an inference of intent to assist. And there is simply no other independent evidence here.
 
 
 25
 False exculpatory statements are weak circumstantial evidence because the innocent as well as the guilty may lie when confronted with criminal charges. The Second Circuit has stated:
 
 
 26
 [F]alsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt.
 
 
 27
 United States v. Di Stefano, 555 F.2d 1094, 1104 (2d Cir.1977) (quoting United States v. Johnson, 513 F.2d 819, 824 (2d Cir.1975)).
 
 
 28
 The government argues that appellant's nervousness and false statements to the customs agents are circumstantial evidence of his criminal intent. The government cites no cases holding that proximity to contraband, knowledge of its presence, nervousness and false exculpatory statements are sufficient evidence to support a conviction for aiding and abetting possession and importation of drugs. The cases cited by the government involved evidence of active participation in the crime, in addition to false exculpatory statements or nervousness. See United States v. Perkins, 937 F.2d 1397, 1404 (9th Cir.1991); United States v. Ramirez-Jiminez, 967 F.2d 1321 (9th Cir.1992); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir.), cert. denied, 498 U.S. 961 (1990).
 
 
 29
 This circuit has reversed convictions for aiding and abetting possession of drugs in cases in which the government produced more substantial evidence against the defendant than exists in appellant's case. For example, in United States v. Ramos-Rascon, 8 F.3d 704 (9th Cir.1993), the panel reversed convictions for conspiring to possess and aiding and abetting possession of cocaine despite the following evidence: (1) the defendants were present when conspirators discussed prices for the cocaine deal; (2) one defendant drove a truck and the other was a passenger in a truck that followed closely behind the truck that transported five kilos of cocaine to the place of sale; (3) the defendants kept watch on passing traffic as they sat and waited on a wall outside the hotel where the sale occurred; (4) one defendant attempted to flee when arrested. Id. at 707. The government's case against appellant here is weaker than the case against the Ramos-Rascon defendants because there is no evidence that appellant (1) was present for drug deal making or (2) acted as a lookout.
 
 
 30
 In United States v. Sanchez-Mata, a case with facts similar to the present one, this court reversed the defendant's convictions for conspiracy to possess marijuana and possession of marijuana. Sanchez-Mata was a passenger in car in which 141 pounds of marijuana was found. The evidence introduced against Sanchez-Mata was (1) at the time of the stop, the defendant "looked nervous" and made eye contact with the driver; (2) the odor of marijuana was detectable; and (3) the defendant had a previous drug conviction and presumably would recognize the odor of marijuana. 925 F.2d at 1167-68. Sanchez-Mata shows that presence in a car with drugs, knowledge that drugs are present, and evidence of nervousness cannot support a conviction.
 
 
 31
 The evidence against appellant was, in summary: presence, knowledge, nervousness, and false statements. But numerous decisions of this circuit have held that that is not enough for a conviction for aiding and abetting. There was no evidence of the required element of intent from appellant's acts to assist the criminal enterprise.
 
 
 32
 REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Hon. Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This deposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 "SECR" refers to the Government's Supplemental Excerpts of the Clerk's Records
 
 
 [2]
 Garcia-Soberanis was tried with appellant and convicted on all counts. His conviction was upheld by this court in a memorandum decision filed January 27, 1995 (No. 94-50773)
 
 
 [3]
 The government attempted to introduce expert testimony that drug smugglers may add passengers to a vehicle to make it look as normal as possible. Appellant objected to this evidence and the trial court excluded it. SECR, 127-29