**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Inez Ramon SALINAS,
Defendant–Appellant.**

No. 89–10350.

United States Court of Appeals,
Ninth Circuit.

Submitted April 4, 1991.[*]

Memorandum Filed May 24, 1991.

Opinion Aug. 5, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Before WRIGHT, GOODWIN and SKOPIL, Circuit Judges.

## ORDER

The memorandum disposition filed May 24, 1991, is redesignated as an authored opinion by Judge Goodwin.

## OPINION

GOODWIN, Circuit Judge:

Inez Ramon Salinas appeals his conviction following entry of a conditional guilty plea to one count of possession with intent to distribute 104 pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Salinas contends that the district court erred by denying his motion to suppress evidence because the officer who stopped his vehicle lacked founded suspicion of criminal conduct. We agree and reverse.

The Border Patrol officer relied upon six observations to create a founded suspicion. All six are equally consistent with noncriminal activity, such as driving to work in the morning. (1) Salinas was driving a 1974 Pontiac with a large luggage compartment; (2) the car appeared to be heavily loaded; (3) the officer saw fresh handprints in the dust on the trunk; (4) Salinas appeared to be a Mexican; (5) the car was registered in Bisbee, and (6) Salinas glanced at the officer as he drove past the Border Patrol car.

On December 6, 1988, Border Patrol Agent Daniel Moreno was parked observing traffic on State Highway 80, a two-lane paved road running north from Mexico connecting Douglas, Bisbee, Benson and Willcox with Tucson. Near Benson, Arizona, about 70 miles from the border, he was watching fairly heavy morning commuter traffic. Moreno observed a white Pontiac automobile driven by Salinas travelling at normal speed northbound at 8:35 a.m. Moreno noticed that the vehicle was an

Jose H. Robles, Asst. Federal Public Defender, Tucson, Ariz., for defendant-appellant.

Milan D. Tesanovich, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

older model with a large trunk and passenger area which, in his experience, was of a type commonly used for drug and alien smuggling. He also noticed that the vehicle appeared loaded down in the rear and that the driver was of Spanish or Mexican origin. As the vehicle passed Agent Moreno, the driver glanced at him, prompting Agent Moreno to follow the vehicle.

Agent Moreno followed the vehicle for about four or five miles, during which time he noticed that there was dust on the vehicle's trunk with fresh handprints visible on it. While being followed, the vehicle did not speed up or make any unusual movements. A registration check revealed that the vehicle was from Bisbee, Arizona, near the town of Naco which the agent knew to have a high concentration of drug and alien smuggling. Upon receiving the results of the registration check, and based upon his observations to that point, Agent Moreno stopped the vehicle. As he walked towards the vehicle, Agent Moreno noticed two large bags in the back seat. When asked to open the bags, Salinas got out of his vehicle, opened the back door and opened the bags, revealing 104 pounds of marijuana.

Salinas moved to suppress the marijuana on the ground that the facts articulated by the officer, if sufficient to justify this stop, would also justify the arrest of every Mexican male driving to work in an old Pontiac on State Route 80 if his car was dusty, carrying packages, and was registered in Bisbee.

■ The fourth amendment forbids stopping a vehicle even for the limited purpose of questioning its occupants unless police officers have a founded suspicion of criminal conduct. *United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1395 (9th Cir.1989). "Founded suspicion must exist at the time the officer initiates the stop." *United States v. Thomas*, 863 F.2d 622, 625 (9th Cir.1988). In evaluating whether founded suspicion exists, the totality of the circumstances should be considered. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989); *United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989).

■ Founded suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Robert L.*, 874 F.2d 701, 703 (9th Cir.1989) (no founded suspicion where driver quickly glanced at officers and did not break any traffic laws, and vehicle had large trunk which did not appear heavily loaded). "Permissible deductions or rational inferences must be grounded in objective facts and be capable of rational explanation." *Hernandez–Alvarado*, 891 F.2d at 1416. "The facts are to be interpreted in light of a trained officer's experience." *Id.* at 1416 (nervous demeanor of driver and passengers, reduction in speed of vehicle, presence of two-way antenna on trunk, driver's residence in neighborhood under investigation for drug activity, and size of vehicle trunk were together insufficient to establish founded suspicion); *Nicacio v. United States INS*, 797 F.2d 700, 705 (9th Cir. 1985).

■ It is a well known fact, of which we can take judicial notice, that Mexican males, driving old model General Motors sedans, blend into the morning commuter traffic to transport tons of Mexican marijuana from ports of entry in small towns along the Arizona–Sonora border. It is also well known that many thousands more Mexican males drive old model General Motors cars to work every morning. This phenomenon might justify the installation of a checkpoint where all cars could be inspected, or subjected to canine sniffing, but it does not justify the random stopping of "suspicious" looking cars because the officer knows that a substantial number of them will, indeed, be carrying contraband.

Thousands of United States citizens of Mexican ancestry drive old cars on perfectly legitimate errands, with 100 pounds of potatoes or carpenter tools or other commodities weighing down the rear springs. A driver who glances at a border patrol car does not thereby become a suspicious character.

REVERSED.