951 F.2d 364
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andres NAVARRO-LOPEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ignacio CABANILLAS-ZATARAIN, Defendant-Appellant.
 Nos. 90-50655, 90-50662.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided Dec. 13, 1991.
 
 Before SNEED, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Andres Navarro-Lopez appeals his jury conviction for possession with intent to distribute cocaine. Ignacio Cabanillas-Zatarain appeals his jury conviction for aiding and abetting possession with intent to distribute cocaine. These criminal actions were a result of a border patrol stop where cocaine was seized from a secret compartment in the trunk of an automobile. We affirm.
 
 
 3
 * Both Navarro-Lopez and Cabanillas-Zatarain argue that the stop of the vehicle by Border Patrol Agents was not supported by "founded suspicion." We review de novo the district court's conclusion that founded suspicion existed. United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989).
 
 
 4
 The fourth amendment forbids stopping a vehicle, even for the limited purpose of questioning its occupants, unless there is founded suspicion of criminal conduct. United States v. Salinas, 940 F.2d 392, 394 (9th Cir.1991). Founded suspicion must exist at the time the officer stops the vehicle. Id. Founded suspicion exists if, under the totality of the circumstances, "an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime." Id. (citing United States v. Cortez, 449 U.S. 411, 416-18 (1981)). The "whole picture [ ] must be taken into account." Cortez, 449 U.S. at 417.
 
 
 5
 In United States v. Brignoni-Ponce, 422 U.S. 873 (1975), the Supreme Court indicated that relevant factors that amount to founded suspicion include the characteristics of the area in which the officer encounters a vehicle, proximity to the border, usual patterns of traffic, recent illegal border crossings, a driver's behavior, and aspects of the vehicle itself. Brignoni-Ponce, 422 U.S. at 884-85. Although race or color alone does not justify an investigatory stop, racial appearance may be considered as a relevant factor. United States v. Fouche, 776 F.2d 1398, 1402-03 (9th Cir.1985).
 
 
 6
 The relevant factors in the present case are: (1) Cabanillas-Zatarain's failure to look at the border patrol car when the automobile was illuminated by the Agents' headlights; (2) driving close to the white fog line; (3) driving too close to, and veering over, the yellow center line; (4) a "furtive" glance by the driver as the Agents passed, while the passenger stared straight ahead; (5) the car was registered to a name the Agents thought was female, but the car was driven by two males; (6) the car had crossed the border within the previous hour; (7) it was dark; (8) the size of the trunk and backseat of the car; (9) the location was notorious for transportation of illegal aliens; and (10) the passenger appeared to be Hispanic.
 
 
 7
 We agree with the district court that these factors, in totality, are sufficient to support the Agents' suspicion that the vehicle's occupants were likely engaged in criminal activity.
 
 B
 
 8
 We review the lawfulness of a search and seizure de novo. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989). Navarro-Lopez argues that the tapping of his car by the Border Patrol Agent constituted a search. This issue was not raised in the district court. "Thus, in the absence of timely objection, only those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings will be corrected by this court." United States v. Smith, 790 F.2d 789, 798 (9th Cir.1986). We find no exceptional circumstances to justify our inquiry into this issue.
 
 
 9
 Navarro-Lopez argues that consent to search was given involuntarily. He appears to argue that there was no founded suspicion to stop the vehicle, therefore the consent was ineffective. Because we have already determined that the stop was reasonable, this argument has no force. Both Cabanillas-Zatarain and Navarro-Lopez gave effective consent to the search. The evidence seized during the search was correctly admitted.
 
 C
 
 10
 Cabanillas-Zatarain argues that Navarro-Lopez's defense that he did not participate in the concealment of the cocaine and had no knowledge of its presence in the vehicle was incompatible with Cabanillas-Zatarain's defense that he did not create the secret compartments. He also references Navarro-Lopez's unsuccessful attempts at trial to present the disparate life-styles of the two men. Cabanillas-Zatarain argues that it was error, based on the above arguments, to deny a motion to sever the trials pursuant to Fed.R.Crim.P. 14.
 
 
 11
 We review the district court's decision to deny a motion to sever for an abuse of discretion. United States v. Marsh, 894 F.2d 1035, 1040 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1143 (1990). The test for an abuse of discretion is whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way. United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.1980), cert. denied, 449 U.S. 856 (1980). The ruling of the trial judge is rarely disturbed on appeal. Id.
 
 
 12
 "To obtain severance based on the ground of antagonistic defenses, defendants must show more than the fact they will blame each other, they must show that 'the acceptance of one party's defense will preclude the acquittal of the other party ...' " United States v. Valles-Valencia, 811 F.2d 1232, 1238 (9th Cir.1987), modified, 823 F.2d 381 (9th Cir.1987) (quoting United States v. Ramirez, 710 F.2d 535, 546 (9th Cir.1983)).
 
 
 13
 The motion to sever was properly denied. Both defendants sought to shift blame to the other. This alone is insufficient to meet the high burden established in Escalante.
 
 D
 
 14
 Cabanillas-Zatarain argues that evidence presented at trial was insufficient to support his conviction for aiding and abetting. We must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Medina, 940 F.2d 1247, 1250 (9th Cir.1991) (internal quotations omitted) (emphasis in original). To be convicted of aiding and abetting, the "defendant [must] 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991) (quoting Nye & Nissen v. United States, 336 U.S. 613, 620 (1948)).
 
 
 15
 Cabanillas-Zatarain admitted he had been in Mexicali, Mexico. He was the driver of the Oldsmobile, a car with large back seat and trunk space. The Oldsmobile had crossed the border in the previous half-hour before it was stopped. As the Border Patrol Agents followed the Oldsmobile, Cabanillas-Zatarain drove nervously and "furtively" glanced at the Agents when they passed. When the vehicle was stopped, Cabanillas-Zatarain quickly turned his head from side to side apparently trying to locate the advancing Border Patrol Agent. Although he possessed valid citizenship documents, he did not respond when initially questioned by the Agent. While the police dog was checking the car for contraband, Cabanillas-Zatarain stared at the hills, the sky, and the traffic while holding a rabbit's foot keychain.
 
 
 16
 The keychain held the keys to the Oldsmobile. After the Agents discovered the secret compartments in the trunk, the trunk was carefully examined. The Agents discovered that the two compartments were electronically controlled with an intricate switch system. The ignition had to be on to work the switches. Because Cabanillas-Zatarain possessed keys to the car, it can be inferred that he had control over the vehicle.
 
 
 17
 Although there was more than one occupant in the vehicle, either of whom could have stored the cocaine in the secret compartment, we may infer that the driver of the vehicle was aware of the contraband. See United States v. Campbell, 507 F.2d 955, 958 (9th Cir.1974) (appearance of nervousness, complete control of vehicle, defendant was driver of vehicle, drugs in close proximity to driver, friendship of passengers, and joint nature of venture justified inference). The facts presented are distinguishable from those in United States v. Martinez, 514 F.2d 334 (9th Cir.1975). In Martinez, an inference of knowledge from the fact the defendant was driving the car was inappropriate because no other evidence was presented that the defendant controlled the car he was driving. Martinez, 514 F.2d at 338-39.
 
 
 18
 Cabanillas-Zatarain's conduct indicated that he was nervous. He was the driver of the contraband-laden car. He possessed keys to the car. Viewing the evidence most favorably to the prosecution, we conclude that ample evidence was presented to support Cabanillas-Zatarain's conviction.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3