967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto MOLINA-SIERRA, Defendant-Appellant.
 No. 91-10232.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 12, 1992.
Decided June 17, 1992.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Alberto Molina-Sierra appeals the denial of his motion to suppress evidence obtained as a result of an investigatory stop of his vehicle on the ground that the Border Patrol Agent did not have reasonable suspicion to stop the vehicle. We affirm.
 
 
 3
 * The facts in this case are undisputed. On August 26, 1987, Border Patrol Agent Robert Lindemann stopped Appellant's vehicle because he suspected that the individuals in the automobile were engaged in alien smuggling. Agent Lindemann's suspicion was based on seven factors which he observed while following the vehicle: (1) the vehicle was located in an area that is notorious for alien smuggling; (2) the vehicle travelled at a high rate of speed before it approached Agent Lindemann's vehicle,[1] slowed down as it passed Agent Lindemann, and then sped up again; (3) the vehicle was old, and older vehicles are commonly used in alien smuggling; (4) the vehicle abruptly departed off the highway immediately after Agent Lindemann pulled up behind it; (5) after Appellant's vehicle exited the highway, Agent Lindemann could see Appellant, but not the two passengers he had observed on the highway; (6) Appellant made furtive glances in his rearview mirror after Agent Lindemann pulled up behind him at the light at the end of the exit ramp; and (7) Appellant was of Hispanic origin.
 
 
 4
 The district court noted that no single fact justified stopping Appellant's vehicle. Viewing all the facts together, however, the district court held that the Agent had reasonable suspicion to conduct the investigatory stop.
 
 II
 
 5
 A government agent must have reasonable suspicion of criminal activity before making an investigatory stop of a vehicle. United States v. Franco-Munoz, 952 F.2d 1055, 1057 (9th Cir.1991). Reasonable suspicion is "characterized as specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity." Id. To determine whether reasonable suspicion exists, the court must examine the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), and interpret the facts in light of the officer's experience. United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989).
 
 III
 
 6
 To support the argument that Agent Lindemann did not have reasonable suspicion to stop the vehicle, Appellant relies on two cases in which we have found reasonable suspicion lacking: United States v. Salinas, 940 F.2d 392 (9th Cir.1991), and Hernandez-Alvarado, 891 F.2d 1414 (9th Cir.1989). We do not agree that Salinas and Hernandez-Alvarado are controlling. In Salinas, the Border Patrol officer relied on six factors: (1) the defendant drove an old automobile with a large trunk; (2) the automobile appeared to be heavily loaded; (3) the trunk had fresh hand prints on it; (4) the defendant appeared to be Mexican; (5) the car was registered in Bisbee, Arizona, which is close to a town associated with drug and alien smuggling; and (6) the defendant looked at the officer as he drove past the officer's automobile. Salinas, 940 F.2d at 393. We held that all six factors were "equally consistent with noncriminal activity, such as driving to work in the morning." Id. Since "[t]housands of United States citizens of Mexican ancestry drive old cars on perfectly legitimate errands[,] ... [a] driver who glances at a border patrol car does not thereby become a suspicious character." Id. at 395.
 
 
 7
 In Hernandez-Alvarado, the government cited several factors as support for the officer's reasonable suspicion: (1) the defendant had a nervous demeanor; (2) the defendant reduced the vehicle's speed even though he was not exceeding the speed limit; (3) a two-way antenna protruded from the trunk; (4) the defendant resided in a neighborhood which was under investigation for narcotics activities; (5) the car was "purchased from a dealership associated with drug trafficking;" and (6) the vehicle's trunk was large. Hernandez-Alvarado, 952 F.2d at 1057. We held that all of these factors, even when considered together, could not create reasonable suspicion because "they describe too many individuals." Id. at 1418. For example, we noted that the dealership in question sold cars to citizens with absolutely no connection to drug activity, and that many "law-abiding motorists have two-way antennas installed on their cars, live near the Mexican border, and reduce their speed on the freeway when being followed by a law enforcement vehicle." Id. at 1419.
 
 
 8
 Unlike Salinas and Hernandez-Alvarado, we believe that the facts in this case are not equally consistent with noncriminal activity, and that they do not describe too many individuals. See Franco-Munoz, 952 F.2d at 1057-58 (reasonable suspicion of criminal activity when vehicle located in area associated with alien smuggling during time of day in which such activity commonly occurs, defendant did not look at officer as he passed patrol car, defendant glanced nervously in rearview mirror when patrol car followed him, vehicle associated with alien smuggling, and vehicle weighted down even though defendant was only person in car). Appellant did more than merely slow down in front of Agent Lindemann's vehicle. Appellant, whom Agent Lindemann believed to be of Hispanic origin, drove an automobile commonly associated with alien smuggling in an area known for frequent alien smuggling. More revealing is the fact that Appellant sped up after passing Agent Lindemann's vehicle, abruptly exited the highway immediately after Agent Lindemann approached him from behind, and began to look nervously in the rearview mirror at the Agent.[2]
 
 
 9
 It would be unusual for a law-abiding motorist to speed up after passing a law enforcement vehicle, and then make a sudden departure from the highway after the law enforcement vehicle began to follow him. It is also suspicious that after the vehicle exited the highway, the Agent could no longer see the passengers. It is true that each factor, considered in isolation, would not support a finding of reasonable suspicion. When considered together, however, these factors "paint a picture that would create in the mind of a trained border patrol agent a reasonable suspicion that the [occupants] were engaged in criminal activity." Franco-Munoz, 952 F.2d at 1058. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Agent Lindemann believed the vehicle was going fast, he could not determine whether it exceeded the speed limit
 
 
 [2]
 In Salinas, by contrast, the vehicle did not make any unusual movement after the officer began to follow it. Salinas, 940 F.2d at 394