977 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Kenneth Michal CHICO, Sr.; Javier Mosqueira-Talamente,
Defendants-Appellees.
 No. 92-10061.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 18, 1992.*
Decided Oct. 15, 1992.
 
 Before ALARCON, BOOCHEVER and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The United States ("the Government") appeals from the grant of Kenneth Michael Chico, Sr. and Javier Mosqueira-Talamante's motion to suppress the marijuana discovered in their automobile following a stop by a border patrol agent. The Government contends that the motion to suppress should have been denied because the facts articulated by the border patrol agent were sufficient to provide founded suspicion that the appellees were involved in criminal activity. We affirm the grant of the motion to suppress the marijuana because we conclude that the totality of the circumstances describe a large category of presumably innocent persons.
 
 
 3
 We review a district court's factual findings for clear error and give special deference to a trial court's credibility findings. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). We review de novo whether those facts provide founded suspicion to justify an investigatory stop. United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989).
 
 
 4
 The Government contends that the following facts support the existence of founded suspicion to justify the stop. Border Patrol Agent David Boland testified that the region in which the appellees were stopped had a reputation for being a drug-and-alien smuggling area. Earlier that night, he had been informed that smuggling activity was suspected because the border fence had been cut and horses had crossed the border. He was unable to see in the appellees' automobile because it had dark tinted windows. When the appellees' automobile came within view of Agent Boland's marked patrol car, it slowed to almost a stop. Agent Boland followed the automobile, which was traveling about 40 miles an hour, until they reached the town of Sells, Arizona. Once in Sells, the car's directional signal remained on for a period of time after it made a turn. Agent Boland further noted that the car started to make a left turn, but then continued to drive straight ahead.
 
 
 5
 Agent Boland also testified that the appellees' automobile drove through Sells at five miles an hour. From the district court's comments at the suppression hearing, we were unable to determine whether the district court found this testimony credible. We therefore ordered the district court to make an express finding on the question whether Agent Boland's testimony that appellees' vehicle was driven through Sells at a speed of 5 miles per hour was credible. In response to this order, the district court stated that it "did not consider the testimony of the agent that the appellees' vehicle was traveling 5 miles per hour through Sells, Arizona to be credible." We are required to give special deference to a district court's credibility findings. Ramos, 923 F.2d at 1356. In light of the district court's credibility finding and our review of Agent Boland's testimony at the suppression hearing, the finding that the car did not travel at 5 miles per hour through Sells is not clearly erroneous.
 
 
 6
 The Government argues that the district court exceeded its authority by exercising supervisory power over the report writing of the Border Patrol because it considered the fact that there was no mention of the 5 mile per hour speed limit in the agent's report when it evaluated the agent's credibility. This argument lacks merit. The district court is entitled to consider the fact that Agent Boland failed to mention this crucial fact in his report, in conjunction with the agent's demeanor, to determine the credibility of his testimony that the car travelled through Sells at 5 miles per hour. See United States v. Thomas, 863 F.2d 622, 627 (9th Cir.1988) (district court's decision not to consider a factor potentially relevant to the existence of founded suspicion was not clearly erroneous when the detaining officer failed to mention that factor in a declaration in which he specifically stated the factors he considered before making the stop).
 
 
 7
 The facts articulated by Agent Boland do not demonstrate founded suspicion of ongoing criminal activity necessary to justify the investigative detention of the appellees' automobile. The Fourth Amendment prohibits an officer from stopping a vehicle without founded suspicion of criminal conduct at the time of the stop. United States v. Salinas, 940 F.2d 392, 394 (9th Cir.1991). In order to justify a stop, officers must be "aware of specific, articulable facts, that, together with rational inferences from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime." Salinas, 940 F.2d at 394. We must consider the totality of the circumstances to determine whether founded suspicion exists. United States v. Sokolow, 490 U.S. 1, 8 (1989); Salinas, 940 F.2d at 394. Although we must consider the experience of a trained officer, such experience "may not be used to give the officers unbridled discretion in making a stop." Hernandez, 891 F.2d at 1416. Where the circumstances "describe a very large category of presumably innocent travellers who would be subject to virtually random seizures," an investigatory stop is not justified. Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curiam ).
 
 
 8
 In this matter, the facts articulated by the border patrol agent, even considered in their totality, do not justify the investigative stop of the appellees' car. The fact that the appellees slowed to almost a stop after spotting a marked Border Patrol car, left on their car's directional signal for a period of time after making a turn, and then decided to drive straight ahead after beginning to make a left turn in a region in which there had been earlier evidence of illegal smuggling fails to distinguish the appellees from many law abiding citizens driving late at night on a deserted highway who might react to the presence of a marked patrol car the same way as the appellees in this case. See Hernandez-Alvarado, 891 F.2d at 1414 (no reasonable suspicion to stop car where occupants had nervous demeanor, driver reduced speed when he saw a marked patrol car, car had a two-way antenna, the driver resided in a neighborhood under investigation for narcotics activity, the car had been purchased from a dealership associated with drug trafficking, and the car had a large trunk); Salinas, 940 F.2d at 394-95 (a driver who appeared to be Mexican driving a large, heavily loaded car registered in a town associated with drug and alien smuggling did not establish the founded suspicion necessary to justify an investigative stop).
 
 
 9
 The Government argues that Cervantes-Cuevas v. INS, 797 F.2d 707 (9th Cir.1985) mandates that we reverse the district court's finding that no founded suspicion existed in this case. In Cervantes, we concluded that border patrol agents had reasonable suspicion to stop a car where the car's Hispanic driver slowed down upon approaching a Border Patrol vehicle, then proceeded to speed pass the vehicle. Id. at 708. Crucial to our determination that reasonable suspicion existed was the Border Patrol agents' knowledge that many undocumented aliens were fleeing in automobiles from a housing development in that area at the same time as an INS investigation into the presence of undocumented aliens at that housing development. Id. at 710.
 
 
 10
 In Cervantes, the agents knew that an ongoing search of the nearby housing development was responsible for aliens driving their cars down the highway to flee the INS investigation. In this matter, no evidence links the presence of the appellees' car on the highway with the fact that the border fence had been cut and horses had crossed the border earlier that evening. Accordingly, the Government cannot rely on these facts to demonstrate that the border patrol agent had reasonable suspicion to detain the appellees' car.
 
 
 11
 The fact that the turn signal of the appellees car remained on after the car turned and the appellees' car proceeded straight after beginning a left turn also fails to justify an investigative stop. Minimal deviations from normal driving in reaction to a marked patrol car do not demonstrate founded suspicion of criminal activity. See United States v. Robert L., 874 F.2d 701, 704 (9th Cir.1989) (leaving the scene of traffic accident more quickly than other traffic and swerving into another lane was a reasonable response when a marked patrol car in the lane behind the defendant approached at high speed). An innocent driver might also slow down at seeing a marked patrol car on a deserted highway and then drive in a mildly unusual manner either in reaction to being followed or because he was in an unfamiliar town late at night.
 
 
 12
 We have conducted an independent review of the facts presented at the suppression hearing. We hold that the totality of the circumstances do not establish founded suspicion.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), 9th Cir.Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3